UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-81250-CIV-MARRA

EMBROIDME.COM, INC.,

    Plaintiff,
vs.

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

    Defendant.
_____/

**OMNIBUS OPINION AND ORDER**

This cause comes before the Court upon Plaintiff's Motion to Correct Scrivener's Error and Insurance Policy Attached to the Complaint (DE 52); Defendant's Motion for Summary Judgment (DE 59); and Plaintiff's Motion for Summary Judgment (DE 69). Additionally, Plaintiff's (DE 84) and Defendant's (DE 86, 93) Objections to Magistrate Judge's Order and Amended Order Denying Defendant's Motion to Assess Fees and Costs and Plaintiff's Motion to Compel (DE 75, 88) are before the Court. These motions and objections are briefed and ripe for review. The Court has considered the arguments and is otherwise advised in the premises.

**I. Background**

This is a breach of contract action. Compl. (DE 1). Plaintiff had a commercial general liability insurance policy ("Policy") with the Defendant Travelers Property Casualty Company of America ("Travelers" or "Defendant").[1] Plaintiff alleges that Travelers violated the terms of the

---

[1] On August 7, 2013, Plaintiff filed its Motion to Correct Scrivener's Error and Insurance Policy Attached to the Complaint. (DE 52). Defendant responded (DE 63), and Plaintiff replied (DE 71). Plaintiff alleges that it has been insured by Travelers over a period of several years. Travelers' Commercial General Liability Policy Number P-630-917K8798-TIL-07 covering the period of 2007-2008 was referenced in the Complaint and attached to the Complaint. (DE 1-1). However, Travelers' Commercial General Liability Policy Number P-630-917K8798-TIL-06 covering the period of 2006-2007 is the Policy applicable to the events in question. Plaintiff seeks to correct the scrivener's error in the Complaint, and does not seek to make any changes to the allegations or claims in this case. Defendant's chief

Policy when it did not reimburse Plaintiff the full cost of defending a legal action. This case was removed from the state court on the basis of diversity jurisdiction. (DE 1).

The following material facts are not in dispute. Plaintiff was a defendant in a copyright infringement action styled *JCW Software, LLC v. Embroideme.com*, No. 9:10-cv-80472-WJZ ("underlying action"). Def.'s Statement of Material Facts, ¶ 8 (DE 58); Pl.'s Statement of Material Facts, ¶ 5 (DE 68). The underlying action was initiated in April of 2010. *Id.* Plaintiff retained the firm of McHale and Slavin, P.A. to defend it in that suit, and the retainer agreement was dated June 28, 2010. McHale Dep., p. 13 (DE 57-3). Plaintiff notified Travelers of the underlying action and of its claim under the Policy on October 10, 2011. Am. Cary Aff., ¶ 6 (DE 67-1); Nov. 21, 2011 Letter (DE 67-2).

On November 21, 2011, Travelers sent Plaintiff a letter advising that the Policy covered the defense of the underlying action under the "web site injury" provision, that Travelers would participate in the defense under the reservation of rights, and that Travelers would only pay post-tender defense costs. Nov. 21, 2011 Letter (DE 67-2); Def.'s Statement of Material Facts, ¶ 24 (DE 58). On February 20, 2012, McHale and Slavin, P.A. executed a retainer agreement with Travelers. McHale Aff., ¶ 4 (DE 66-1). Travelers participated in the defense of the underlying action paying McHale and Slavin, P.A. $315 per hour, as opposed to the $400 per hour that Plaintiff had agreed to pay the attorneys when he had hired them. McHale Dep., pp. 19-20 (DE 57-3).

---

argument in opposition is that Plaintiff did not act diligently because Plaintiff did not discover this error prior to the deadline to amend the pleadings in this action, which was set for February 15, 2013 (DE 11).
   However, Defendant does not deny that the relevant provisions of the 2006-2007 and 2007-2008 policies are the same. Likewise, there is no dispute that both parties have always used the correct P-630-917K8798-TIL-06 Policy. *See* Def.'s Nov. 21, 2011 Letter (DE 67-2). Lastly, Plaintiff is not seeking to change the claims in this case. Therefore, Plaintiff's Motion to Correct Scrivener's Error and Insurance Policy Attached to the Complaint (DE 52) is **GRANTED**, and the Court will rely on the P-630-917K8798-TIL-06 Policy (DE 52-1) in its analysis.

In this case, Plaintiff and Defendant filed cross-motions for summary judgment. Defendant contends that the Policy does not provide coverage for defense costs incurred before defense of the action was tendered to the insurer. Defendant asserts that it could not fulfill its duty to defend the case before it was notified of the suit. Plaintiff counters that there is no exclusion under the Policy for pre-tender costs; that Defendant failed to comply with the provisions of the Florida Claims Administration Statute, Fla. Stat. § 627.426(2) ("FCAS"); and that this failure bars Defendant from relying on coverage defenses. Defendant responds that the FCAS does not apply because there is no coverage under the Policy for pre-tender costs, *see AIU Ins. Co. v. Block Marina Inv., Inc.*, 544 So. 2d 998, 1000 (Fla. 1989), and that Plaintiff was on notice that Defendant only intended to pay for post-tender defense costs. Only the expenses incurred prior to October 10, 2011 are at issue in this case.

## II. Legal Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the

movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50 (internal citations omitted).

### III. Discussion

**1. Choice of law**

Because jurisdiction in this case is premised on diversity, the court must use the choice-of-law rules of the forum state to determine the law of which state governs. *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997). Florida, the forum state, applies the rule of *lex loci contractus* to contracts. *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla.

2006). With respect to insurance contracts it states that the law of the jurisdiction where the contract was executed governs. *Id.*; *LaFarge Corp.*, 118 F.3d at 1515; *Nat'l Fire & Marine Ins. Co. v. Adoreable Promotions, Inc.*, 451 F. Supp. 2d 1301, 1306 (M.D. Fla. 2006).

Here, the insured is a Florida corporation with its principal place of business in West Palm Beach, Florida. Compl., ¶ 2 (DE 1). While the "Location Schedule" of the Policy in question includes an office in Massachusetts, it also lists five Florida locations, including an office, and the cover sheet of the Policy lists Plaintiff's Florida address. (DE 52-1). Therefore, it appears that the insurance contract in question was executed in Florida. Further, the parties rely on cases that apply Florida law. Thus, the Court concludes that Florida law governs.

**2. Construction of the Policy and defenses**

Interpretation of an insurance contract is a question of law. *Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985). In Florida, insurance policies are construed "in accordance with the plain language." *Chandler v. Geico Indem. Co.*, 78 So. 3d 1293, 1300 (Fla. 2011), reh'g denied (Jan. 23, 2012) (quoting *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla.2000)). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the another limiting coverage, the insurance policy is considered ambiguous." *Auto-Owners Ins. Co.*, 756 So. 2d at 34. Ambiguous policy provisions are interpreted liberally in favor of coverage. *Id.* Likewise, conflicting policy provisions are to be interpreted in favor of maximum coverage. *Dyer v. Nationwide Mut. Fire Ins. Co.*, 276 So.2d 6, 8 (Fla. 1973); *Aromin v. State Farm Fire & Cas. Co.*, 908 F. 2d 812, 813 (1990). Coverage exclusions are interpreted strictly against the insurer. *Auto-Owners Ins. Co.*, 756 So. 2d at 34. On the other hand, "in construing insurance policies, courts should read each policy as a whole, endeavoring to

give every provision its full meaning and operative effect." *Id.*

Plaintiff asserts that Defendant is foreclosed from raising its defenses by the Florida Claims Administration Statute, Fla. Stat. § 627.426 ("FCAS"), which states in relevant part:

> A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:
>
> (a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery; and
>
> (b) Within 60 days of compliance with paragraph (a) or receipt of a summons and complaint naming the insured as a defendant, whichever is later, but in no case later than 30 days before trial, the insurer:
>
> 1. Gives written notice to the named insured by registered or certified mail of its refusal to defend the insured;
>
> 2. Obtains from the insured a nonwaiver agreement following full disclosure of the specific facts and policy provisions upon which the coverage defense is asserted and the duties, obligations, and liabilities of the insurer during and following the pendency of the subject litigation; or
>
> 3. Retains independent counsel which is mutually agreeable to the parties. Reasonable fees for the counsel may be agreed upon between the parties or, if no agreement is reached, shall be set by the court.

Fla. Stat. Ann. § 627.426(2) (West).

A "coverage defense" under FCAS "means a defense to coverage that otherwise exists." *AIU Ins. Co.*, 544 So.2d at 1000. For example, failure to provide timely notice is a "coverage defense" within the meaning of Section 627.426(2). *Arnett v. Mid-Continent Cas. Co.*, 8:08-CV-2373-T-27EAJ, 2010 WL 2821981, at *10 (M.D. Fla. July 16, 2010). However, FCAS does not apply if there is no coverage because this statute only governs "coverage defenses." *AIU Ins. Co. v. Block Marina Inv., Inc.*, 544 So. 2d 998, 1000 (Fla. 1989); *Scottsdale Ins. Co. v. Deer Run Prop. Owner's*

*Ass'n, Inc.*, 642 So. 2d 786, 787 (Fla. 4th DCA 1994).

> SECTION I - COVERAGES
> . . .
> SUPPLEMENTARY PAYMENTS  - COVERAGES A and B[2]
> 1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
> . . .
> d. All reasonable expenses incurred by the insured *at our request* to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of the time off work."

*Id.*, p. 7 (DE 52-1) (emphasis supplied).

> SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS
> . . .
> 2 Duties In The Event Of Occurrence. Offense, Claim Or Suit
> . . .
> b. If a claim is made or "suit" is brought against any insured, you must:
> (1) Immediately record the specifics of the claim or "suit" and the date received; and
> (2) Notify us as soon as practicable.
> You must see to it that we receive written notice of the claim or "suit" as soon as practicable
>
> c. You and any other involved insured must:
> (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
> (2) Authorize us to obtain records and other information;
> (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
> (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
>
> d. *No insured will, except at that insured's own cost, voluntarily* make a payment, *assume any obligation, or incur any expense,* other than for first aid, *without our*

---

[2]Under the Policy Coverage A is "Bodily Injury and Property Damage Liability," and Coverage B is "Personal and Advertising Injury Liability."  Policy, pp. 1, 5 (DE 52-1).  The "Web Xtend Liability" endorsement, under which the underlying action was covered, amended some portions of the "Supplementary Payments - Coverages A and B" section, but not the quoted paragraph 1.

*consent.*
Policy, pp. 10-11 (DE 52-1)(emphasis supplied).

Here, Plaintiff asserts that FCAS applies because failure to provide timely notice is a "classic coverage defense." *Arnett*, 2010 WL 2821981, at *10. It is undisputed that Travelers was notified of the claim on October, 10, 2011, and that Travelers sent Plaintiff the reservation of rights letter on November 21, 2011, or 42 days later. Further, while McHale and Slavin, P.A. clearly was "mutually agreeable" independent counsel, Travelers only retained this firm on February 20, 2012, or 91 days after the reservation of rights letter. Thus, if FCAS applies, Travelers may be estopped from raising its late notice defense.

However, Section I - Coverages, Supplementary Payments - Coverages A and B(1)(d) of the Policy unambiguously states that coverage extends to defense costs incurred by the insured at Travelers' request. Further, Section IV - Commercial General Liability Conditions (2)(d) clearly prohibits the insured from voluntarily assuming any obligation or incurring any expense without Travelers' consent. Accordingly, under the plain language of the Policy there is no coverage for the defense costs incurred without Travelers' knowledge and not at Travelers' request. *See generally Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 453 F. App'x 871, 877 (11th Cir. 2011) (even though the plain language of the policy did not specifically exclude the investigation costs for potential claims, there was no coverage of investigative costs of an anticipated claim because the explicit language was not necessary and because the operative facts did not create a claim under the policy).

When there is no coverage, FCAS does not apply. *AIU Ins. Co.*, 544 So. 2d at 1000 (Fla. 1989). Accordingly, the timing of Travelers' denial of coverage of pre-notice costs and of retaining

defense counsel is irrelevant.

Finally, because coverage under the Policy does not extend to defense costs incurred without a request from Travelers, no breach of contract occurred.  Thus, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Summary Judgment is necessarily **DENIED**.

**3. Discovery disputes**

The parties appeal Magistrate Judge's Order and Amended Order (DE 75, 88) denying Defendant's Motion to Assess Fees and Costs (DE 56) for Plaintiff's alleged failure to respond in the affirmative to Defendant's certain Requests to Admit and denying Plaintiff's Motion to Compel Discovery (DE 51) and to overrule Defendant's work product objections (DE 51).  A magistrate judge's order may only be overturned if it is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  Here, the objecting parties have not established that the Amended Order of the Magistrate Judge was clearly erroneous or contrary to law.  Accordingly, the parties' objections are **OVERRULED**.

## IV. Conclusion

In sum, Plaintiff's Motion to Correct Scrivener's Error and Insurance Policy Attached to the Complaint (DE 52) is **GRANTED**; Defendant's Motion for Summary Judgment (DE 59) is **GRANTED**; Plaintiff's Motion for Summary Judgment (DE 69) is **DENIED**; and Plaintiff's and Defendant's Objections (DE 84, 86, 93) are **OVERRULED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 21st day of January, 2014.

_____
KENNETH A. MARRA
United States District Judge